FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 09, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ASHLEY C.,[1]

                     Plaintiff,

        v.

FRANK BISIGNANO
COMMISSIONER OF SOCIAL
SECURITY,

                     Defendant.

No.  4:25-CV-05121-RLP

ORDER REVERSING AND
REMANDING THE
COMMISSIONER'S DECISION FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS

BEFORE THE COURT is an appeal from an Administrative Law Judge (ALJ) final decision denying supplemental social security income under Title XVI of the Social Security Act. ECF No. 11. The Court considered the matter without oral argument. For the reasons discussed below, the Court concludes the ALJ erred in assessing Ms. C.'s symptom testimony and the medical opinion of Dr. Thomas Genthe. Remand is required. Therefore, Ms. C.'s brief, **ECF No. 11**, is **granted in part** and **denied in part**, and the Commissioner's brief, **ECF No. 12**, is **denied**.

---

[1] Plaintiff's first name and last initial are used to protect her privacy.

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION
FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 1

## BACKGROUND

Ms. C. is 37 years old and holds a GED. She has prior employment involving housekeeping and assembly line work. Ms. C. carries several mental health diagnoses, including depression, anxiety, and post traumatic stress disorder (PTSD). Ms. C. also struggles with substance abuse and has a history of incarceration and criminal justice interventions, including participation in drug court.

Ms. C. initially filed for disability on May 6, 2020, alleging an onset date of March 1, 2019. Tr. 172-75. This is her second time seeking district court review of an adverse disability decision. Tr. 711-16.

A hearing was held on June 7, 2022. Tr. 32-54. The ALJ issued an unfavorable decision on June 24, 2022 and the Appeals Council denied review. Tr. 1. Ms. C. appealed to this court and the matter was remanded on stipulation. Tr. 711-16.

The hearing on remand took place on June 3, 2025. Tr. 665-84. The ALJ issued a second unfavorable decision on June 18, 2025. Tr. 644-655. Again, the Appeals Council denied review. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review is limited; the

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 2

Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). If the evidence in the record "is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a) (citation omitted).

FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 3

(v), 416.920(a)(4)(i)-(v). At step one, if the claimant is engaged in "substantial gainful activity," the Commissioner must find the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's residual functional capacity (RFC), which is the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If not, the analysis proceeds to step five and the Commissioner considers whether, in view of

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 4

the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Ms. C. has not engaged in substantial gainful activity since the date of application. Tr. 644. At step two, the ALJ found the following severe impairments: depressive disorder, anxiety disorder, PTSD, and substance addiction in remission. *Id*. At step three, the ALJ found Ms. C. does not have an impairment or combination of impairments that meets or medically equals the severity of any listed impairment. Tr. 645. The ALJ assessed Ms. C. has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: "The claimant can perform simple tasks with occasional interaction with the public and coworkers." Tr. 646. At step four, the ALJ found Ms. C. has no past relevant work. Tr. 653. At step five the ALJ found there are a significant number of jobs in the national economy Ms. C. can perform. *Id*.

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 5

ANALYSIS

Ms. C. contends the ALJ improperly rejected her symptom testimony along with the medical opinion evidence from Dr. Thomas Genthe. Her arguments appear to pertain to the ALJ's RFC analysis. The Court agrees with Ms. C. that the ALJ's analysis of her symptom testimony and Dr. Genthe's opinion evidence was inadequate, requiring reversal. However, the Court disagrees with Ms. C.'s claim that the record is sufficiently clear to require an award of benefits. Each issue is addressed in turn.

*A. Ms. C.'s Symptom Testimony*

An ALJ must conduct in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (quotation marks and citation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 6

995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

At issue here is the ALJ's assessment at step two of the analysis. The ALJ found there was objective medical evidence of an underlying impairment which could reasonably be expected to produce Ms. C.'s alleged symptoms. Nevertheless, the ALJ ultimately rejected Ms. C.'s claimed symptoms because her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 648.

Ms. C. argues the ALJ's analysis was inadequate because it largely consisted of a summary of evidence in the record followed by a conclusory statement regarding credibility. The Court agrees with this assessment. The ALJ's analysis lacks a focused discussion of which of Ms. C.'s alleged symptoms are deemed not credible based on which aspects of the record. This is contrary to what is required for meaningful appellate review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

A review of the shortcomings in the ALJ's analysis is set forth in detail below, as it may be helpful on remand.

On page 6 of the decision, the ALJ summarized the allegations set forth in Ms. C.'s application for benefit. Tr. 647. The decision then includes five

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 7

paragraphs summarizing various parts of the record. Tr. 647-48. After this summary, the decision includes a paragraph stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 648. Nothing thus far in the analysis specifies which of Ms. C.'s symptoms are inconsistent with the record.

On page 7 of the decision, the ALJ observed Ms. C.'s "participation in drug court for years and recent incarceration for over a year is inconsistent with the degree of emotional dysfunction alleged, but rather shows greater adaptability than the claimant[']s statements/testimony suggest." Tr. 648. This vague assessment of Ms. C.'s involvement in court hearings and incarceration fails to illuminate how the severity of Ms. C.'s condition was undercut by her participation in the criminal justice system. Drug court programs are often adjusted to meet the needs of the disabled and incarceration is a passive intervention.

On page 7-8 of the decision, there is a lengthy paragraph documenting Ms. C.'s mental health record. Tr. 648-49. This paragraph describes times of waxing and waning symptoms. The paragraph does not identify specific ways in which the history undermines Ms. C.'s current symptom testimony. *See Garrison*, 759 F.3d

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 8

at 1017 ("it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment").

On page 8-9, the decision identifies various records that "do not fully align" with Ms. C.'s testimony. Tr. 649-50. Again, the summary in question describes times of waxing and waning symptoms. After summarizing the records, the ALJ concludes Ms. C.'s "statements suggest the intensity and frequency of her symptoms are less limiting than alleged." Tr. 650. This vague assessment does not help the Court's analysis of the record.

Towards the bottom of page 9 of the decision, the ALJ appears to identify three inconsistent statements from Ms. C:

> Furthermore, at her 2022 hearing, she testified she stopped working at her last job because she missed too much work and had panic attacks. At her recent hearing, she stopped work because she could not handle working with a former significant [other] who had raped her with symptoms escalating and never improving since. However, in March 2020, the claimant told a provider that she stopped working her last job because of missed work due to relapse (1F2). The latter of these appears more reliable since of greater temporal proximity to her termination.

Tr. 650. This discussion is largely unhelpful because it fails to clarify what aspect of Ms. C.'s symptoms is contradicted. And it fails to account for the apparent possibility that the three statements were simply different ways of characterizing the same explanation for why Ms. C. left work.

The last paragraph discussing Ms. C.'s symptom testimony documents

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 9

various statements made by Ms. C. to treatment providers. Tr. 650-51. This summary again shows waxing and waning symptoms. At the end of the paragraph, the ALJ describes Ms. C.'s presentation to providers as "benign" and "not consistent with her description of marked/severe social, cognitive, and mental dysfunction." Tr. 651. This conclusory statement is divorced from the summary of Ms. C.'s statements, which appear consistent with the experiences of someone suffering from volatile mental disorders.

In the briefing, the parties debate various reasons why the ALJ discounted Ms. C.'s symptom testimony. As recounted by the parties, it is possible the ALJ made adverse credibility decisions because Ms. C.'s alleged symptoms were inconsistent with her daily activities, including her activities at home, in drug court, or in custody. It could also be the ALJ believed Ms. C.'s symptoms were adequately addressed by adherence to medications. But the ALJ's decision did not clearly cite any of these justifications. This Court declines to comb through the record and speculate as to which symptoms the ALJ discredited and why. Ms. C.'s disorders are the type that can be expected to cycle through periods of improvement and debilitation. *See Garrison*, 759 F.3d at 1018. The ALJ is required to review Ms. C.'s symptoms holistically, recognizing that periods of improved functioning "does not always mean that a claimant can function effectively in a workplace." *Id*. at 1017. Without a clear analysis from the ALJ

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 10

explaining why Ms. C.'s symptom testimony was rejected, this Court cannot properly analyze the ALJ's decision. *Brown-Hunter*, 806 F.3d at 489.[2]

*B. Dr. Genthe's Medical Opinion*

Dr. Genthe performed a mental status examination of Ms. C. on March 10, 2020. Tr. 299-310. The examination included a clinical interview and a psychometric assessment. *Id*. Dr. Genthe's examination resulted in an 11-page psychological/psychiatric report, documented on a standard form issued by the Washington State Department of Social and Health Services. *Id*.

Dr. Genthe opined Ms. C.'s depression and PTSD impacted her ability to work. In rating Ms. C.'s impairments on a scale of none/mild, moderate, marked, severe, or indeterminate, Dr. Genthe found the following marked impairments: ability to communicate and perform effectively in a work setting, ability to maintain appropriate behavior in a work setting, and ability to complete a normal work dan and work week without interruption from psychologically based symptoms. Tr. 303. Dr. Genthe further opined Ms. C.'s overall severity rating was marked. *Id*. When asked whether "vocational training or services" would "minimize or eliminate barriers to employment," Dr. Genthe marked "yes." *Id*.

---

[2] Given the record could be interpreted as consistent with Ms. C.'s symptom testimony, the ALJ's failure to provide proper analysis is not harmless error.

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 11

Although the form asked for an accompanying explanation, none was provided. In his narrative summary, Dr. Genthe described Ms. C.'s prognosis was "guarded." Tr. 304. He explained that, "[a]t this time, she is unlikely to function adequately, and/or consistently in a work setting until her psychological symptoms have been managed more effectively." *Id*. According to Dr. Genthe, Ms. C. would need at least 12 months of treatment. *Id*.

The ALJ rejected Dr. Genthe's opinion testimony as unpersuasive for three reasons. First, Dr. Genthe's examination did not include review of collateral source records. Second, the marked limitations found by Dr. Genthe were not well explained. And third, Dr. Genthe's marked limitation findings were inconsistent with his examination findings and with the record. Ms. C. argues the ALJ's reasons for rejecting Dr. Genthe's opinion are not justified by the record. This critique is at least partially persuasive.

Federal regulations provide an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c, 416.920c. Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required, to explain how

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 12

other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

With respect to the ALJ's first criticism, it is unclear why Dr. Genthe's failure to review collateral records undermines his opinion. The diagnoses arrived at by Dr. Genthe was generally consistent with that of other providers. This strengthens his credibility, not weakens it. Furthermore, it is unclear which aspects of Ms. C.'s prior medical record were undermined Dr. Genthe's assessment. As previously noted, Ms. C.'s mental health conditions can be expected to produce cyclical symptoms. Dr. Genthe recognized the symptoms described by Ms. C. had "fluctuating intensity." Tr. 302. Had Dr. Genthe reviewed Ms. C.'s records, which document this cycle, it is unclear how his findings would have been different.

Going to the ALJ's second criticism, the evaluation report includes at least some discussion of the reasons for Dr. Genthe's opinions. Dr. Genthe explained Ms. C.'s symptoms were not being managed. Tr. 303. In discussing her ability to work, Dr. Genthe commented Ms. C.'s suspiciousness and mistrust in relationships with others would probably been "seen by others as being quite hostile" and "strain[ ]" working relationships "despite any efforts by others to demonstrate support and assistance." Tr. 308. Dr. Genthe's evaluation also discusses various ways Ms. C.'s mental health conditions would impact her relationships with others, including rigid thinking (Tr. 307); depressive experiences of "worthlessness,

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 13

hopelessness, and personal failure" (Tr. 308); and extreme anxiety, impacting her ability to "concentrate and attend" (Tr. 308).

Finally, the ALJ's rejection of Dr. Genthe's opinion as internally inconsistent and inconsistent with the medical records suffers from some of the same flaws as ALJ's rejection of Ms. C.'s symptom testimony. "[M]ental impairments are oftentimes cyclical can impair some areas of function significantly without touching others." *Douglas H. v. Comm'r of Soc. Sec.*, 2025 WL 3001816 at *7 (W.D. Wash. Oct. 27, 2025). Dr. Genthe's findings of marked limitations are social in nature, and that Ms. C. can do laundry for her son or follow terms of her probation does not suggest a higher degree of social functioning. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) ("the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations"); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597,603 (9th Cir. 1989)). Similarly, that Dr. Genthe found Ms. C.'s memory intact does not discredit his limitations in her social and emotional functioning. Further, Dr. Genthe's opinion that vocational

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 14

training or services would help eliminate barriers to employment is consistent with his explanation that Ms. C. may be able to return to full-time work with the assistance of treatment. Tr. 303-04.

Because this matter is subject to remand based on the ALJ's rejection of Ms. C.'s symptom testimony, remand is also appropriate as to Dr. Genthe's opinion. On remand, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources, including Dr. Genthe. 20 C.F.R. §§ 404.1520c, 416.920c. The ALJ's analysis of all medical opinion testimony shall include an assessment of consistency and supportability. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

### C. Remedy

Ms. C. argues this matter should not be remanded for further proceedings. Rather, she claims this Court should remand for an immediate award of benefits. The Court disagrees.

Courts apply the three-part credit-as-true standard to determine when to remand to an ALJ with instructions to calculate and award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020.

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 15

Where the ALJ makes a legal error, but there is a need to resolve conflicting evidence and ambiguities in the record, remand for an award of benefits is inappropriate. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). Only where there are no outstanding issues requiring resolution can a witness's testimony be credited as true without further proceedings. *Id*. at 1105-06. "An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1045-46 (9th Cir. 2017).

This is not a rare case where a remand for benefits is appropriate. The record shows Ms. C. is amenable to treatment. And Dr. Genthe has opined that Ms. C. may, with treatment, be able to "resume fulltime work related activities." Tr. 304. Remand for further proceedings is appropriate.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.

Accordingly,

1.    Ms. C.'s Brief, **ECF No. 11**, is **GRANTED** in part and **DENIED** in part.

2.    Defendant's Brief, **ECF No. 12**, is **DENIED**.

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 16

3.      This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Ms. C. and the file shall be **CLOSED**.

**DATED** March 9, 2026.

REBECCA L. PENNELL
United States District Judge

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS * 17